UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| KRISTINA MYERS, individually, and as Administrator of the Estate of STEVEN P. MYERS, and as natural parent and legal guardian of K.D.M., C.F.M., and K.J.M., minors, <br><br>      Plaintiffs, <br><br>vs. <br><br>VIRGIL BREWER, individually and in his official capacity as Undersheriff of Barber County, Kansas, <br><br>LONNIE SMALL, individually and in his official capacity as Sheriff of Barber County, Kansas, <br><br>      Defendants. | Case No. 17-cv-02682 |

## COMPLAINT

Kristina Myers, individually, and as Administrator of the Estate of Steven P. Myers, deceased, and as natural parent and legal guardian of K.D.M., C.F.M., and K.J.M., minors, alleges and states as follows:

1.  This case arises out of the October 6, 2017 unjustifiable shooting and wrongful death of unarmed Steven P. Myers at the hands of Undersheriff Virgil "Dusty" Brewer and Sheriff Lonnie Small of the Barber County, Kansas Sheriff's Office.

2.  Defendants intentionally deprived Steven P. Myers of his right to be free from unreasonable searches and seizures guaranteed to him by the United States Constitution by shooting and killing him under circumstances where no reasonable officer would have done so.

3.  Defendants' actions were reckless and callously indifferent to Mr. Myers's federally-protected rights.

{00526097}

4. Defendants violated clearly-established law regarding the use of deadly force and are thus not entitled to qualified immunity for the actions complained of herein.

## Jurisdiction and Venue

5. This civil action arises under 42 U.S.C. § 1983. This Court therefore has original jurisdiction under 28 U.S.C. § 1331.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391 because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## Parties

7. Kristina Myers is an individual resident of Barber County, Kansas.

8. Kristina Myers is the widow and duly-appointed Administrator of the Estate of Steven P. Myers, who was a resident of Barber County, Kansas, until his death on October 6, 2017.

9. Steven P. Myers's probate estate is pending in the District Court of Barber County, Kansas, Case Number 2017-PR-000039.

10. Kristina Myers and Steven P. Myers were lawfully married on December 14, 2007 and remained lawfully married until Steven's death on October 6, 2017.

11. K.D.M., C.F.M., and K.J.M. are the minor children of Kristina Myers and Steven P. Myers. They proceed herein by their initials as required under Fed. R. Civ. P. 5.2(a). They reside in Barber County, Kansas with their natural mother and legal guardian, Kristina Myers.

12. Defendant Virgil "Dusty" Brewer is, and was at all relevant times herein, the duly-appointed Undersheriff of Barber County, Kansas.

13. Defendant Lonnie Small is, and was at all relevant times herein, the duly-elected Sheriff of Barber County, Kansas.

14. Both Defendants Undersheriff Brewer and Sheriff Small are sued in their individual and official capacities.

15. In doing the acts and/or omissions alleged herein, both Defendants Undersheriff Brewer and Sheriff Small acted under the color of state law.

### Facts

16. On October 6, 2017, the Barber County Sheriff's Office received a call at 6:26 p.m. that Steven Myers was in the street in front of Buster's Bar in Sun City, Kansas with a shotgun.

17. No officers were in the immediate vicinity of Sun City at the time.

18. Defendants Sheriff Small and Undersheriff Brewer, together with Barber County Sheriff's Deputies Mark Suchy and David Miller, each arrived separately at Sun City at 7:07 p.m., about 41 minutes after the call was received.

19. Deputies Suchy and Miller had each been out of law enforcement academy for only a few weeks at the time.

20. Officers from the Pratt County Sheriff's Office also responded.

21. Sheriff Small and Deputy Suchy, and possibly other officers, wore body cameras during this call, each of which recorded portions of the call.

22. Deputy Miller's patrol vehicle was equipped with a dash camera that recorded portions of this call.

{00526097}                                3

23. By the time officers arrived, Steven Myers had left the area. He had returned home, put away his shotgun, and had taken his dog for a walk. The disturbance initially reported in front of Buster's Bar had long since resolved by the time officers arrived.

24. A group of officers, led by Sheriff Small and his K-9 unit, began searching house-to-house for Steven Myers.

25. Body and dash camera recordings show the officers entering or attempting to enter a number of private residences while searching for Steven Myers.

26. While walking to the house where Steven Myers was located, and less than five minutes before Undersheriff Brewer shot and killed Mr. Myers, Sheriff Small's body camera captured Sheriff Small telling Undersheriff Brewer "A little luck and he'll just pass out and die."

27. Sheriff Small and his K-9, Undersheriff Brewer, and Deputy Suchy entered a home at 201 W. Main Street in Sun City through the front door and began searching it.

28. When the three officers reached the back door, Sheriff Small spotted Steven Myers in a shed in the residence's backyard some 15 feet away.

29. Sheriff Small shouted from inside the residence for Steven to come out of the shed, then immediately turned around and headed for the front door, leading the K-9 away from Steven Myers.

30. As he turned away, Sheriff Small said to Undersheriff Brewer, who was armed with a 12-guage shotgun, "he's in the shed." Sheriff Small indicated by pointing for Undersheriff Brewer to move to the back door and confront Steven Myers.

31. Undersheriff Brewer and Deputy Suchy then stepped through the back door to confront Steven Myers.

32. Within a few seconds of Sheriff Small's command to come out of the shed, Steven Myers was standing—unarmed—outside of the shed in the middle of the backyard.

33. Undersheriff Brewer and Deputy Suchy began shouting at Mr. Myers simultaneously, with one voice saying "Put your hands up!" and the other shouting "Get on the ground!"

34. Mr. Myers stood in the yard, with empty hands at his sides.

35. Mr. Myers did not threaten the officers, brandish a weapon, or attempt to escape.

36. After a mere eight seconds of shouting inconsistent commands at Steven Myers, Undersheriff Brewer fired his 12-gauge shotgun at Mr. Myers's chest from a distance of approximately six to eight feet.

37. Upon information and belief, Undersheriff Brewer fired a "beanbag round" at Mr. Myers—a small fabric pouch filled with lead pellets—which is meant to be a less-lethal weapon when used appropriately.

38. Beanbag shotgun rounds present a well-known risk of death or serious physical injury when fired from less than 10 feet away at a subject's chest, head, neck, or groin.

39. After being shot, Steven Myers screamed "Ow!", fell to his hands and knees, then collapsed face-down on the ground.

40. Undersheriff Brewer handcuffed Mr. Myers then rolled him over face-up, with his hands cuffed behind his back. His shirt was covered in blood.

41. Sheriff Small was just exiting the front door of the residence with the K-9 when Undersheriff Brewer fired the shotgun from near the back door. Sheriff Small, unfazed, told the homeowner who was standing on the front porch, "Beanbag rounded him."

42. The homeowner then walked to the back door, saw Mr. Myers on the ground, and said "God damn, that was a little drastic wasn't it?" Undersheriff Brewer threatened the homeowner with arrest for "interference" and commanded him to leave his own property.

43. Blood began to pool on the ground around Mr. Myers. Deputy Suchy began CPR on Mr. Myers approximately five and a half minutes after the gunshot, while Deputy Miller applied pressure to the wound just below Mr. Myers's left nipple.

44. Sheriff Small and Undersheriff Brewer went to the street and left the two inexperienced deputies alone while they attempted to resuscitate Mr. Myers.

45. Just after the shooting, Sheriff Small is recorded telling another officer "Shot him with a beanbag round. Hadn't shot anybody with it yet."

46. Sheriff Small then disabled his body camera.

47. EMS arrived on scene approximately 22 minutes after the gunshot because Defendants failed to call and stage EMS in a closer location as they were asked to do.

48. The Coroner called Mr. Myers's death at the scene at 8:08 p.m.

49. As the Coroner assessed the scene, he said "That's from a beanbag? Holy shit! I thought they weren't supposed to penetrate. Must've been pretty damn close, like six to eight feet maybe?" As Deputy Suchy began to answer, Sheriff Small interrupted and said "Don't tell him everything."

50. Sheriff Small later instructed Deputy Suchy to disable his body camera, even though Deputy Suchy remained on the scene for several more hours.

51. At no time during his encounter with Defendants was Steven Myers armed with any weapon.

52. Upon information and belief, the Barber County Sheriff's Office maintains no policies or procedures, and provides no training to its officers, for the appropriate use of beanbag shotgun rounds.

53. Plaintiffs found it necessary to engage the services of private counsel to vindicate their Constitutional rights. Plaintiffs are therefore entitled to an award of reasonable attorneys' fees under 42 U.S.C. § 1988 in the event they prevail in this action.

### Count I – Fourth and Fourteenth Amendments (42 U.S.C. § 1983)

54. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

55. Defendant Undersheriff Brewer, acting under color of state law, shot and killed Steven Myers under circumstances where no reasonable officer would have done so.

56. Defendant Sheriff Small, acting under color of state law, failed to adequately train and supervise Defendant Undersheriff Brewer in the appropriate use of beanbag shotgun rounds, which failure proximately led to Steven Myers's death.

57. Defendant Sheriff Small, acting under color of state law, failed to use appropriate force to affect Steven Myers's arrest, namely, deploying the K-9 if necessary rather than his Undersheriff armed with a 12-gauge shotgun.

58. Defendants' conduct under color of state law violated Steven Myers's right as provided under the Fourth Amendment of the U.S. Constitution, made applicable to the States by the Fourteenth Amendment, to be free from unreasonable search and seizure, including the right to be free from the use of excessive, arbitrary, and unreasonable deadly force against him.

59. Defendants' conduct under color of state law violated Steven Myers's right as provided under the Fourteenth Amendment to not be deprived of life or liberty without due process of law.

60. Steven Myers's right to be free from the use of excessive deadly force, and his right not to be deprived of his life without due process of law, were clearly established at the time of Defendants' conduct.

61. Defendants' conduct was with reckless or callous indifference to Mr. Myers's federally-protected rights.

WHEREFORE, Plaintiff Kristina Myers, as Administrator of the Estate of Steven P. Myers, prays for relief as set forth herein.

### Count II – Survival (42 U.S.C. § 1983)

62. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

63. As a result of Defendants' conduct under color of state law, Steven P. Myers suffered immense, conscious pain and suffering after being shot in the chest at close range with a beanbag round fired from a 12-gauge shotgun.

64. Defendants waited more than five minutes after the gunshot to administer first aid, thus prolonging Mr. Myers's suffering before his death.

65. Steven P. Myers could not and did not file a legal action against Defendants for such pain and suffering before his death.

66. Defendants' conduct was with reckless or callous indifference to Mr. Myers's federally-protected rights.

WHEREFORE, Plaintiff Kristina Myers, as Administrator of the Estate of Steven P. Myers, prays for relief as set forth herein.

### Count III – Conspiracy to Use Excessive Force (42 U.S.C. § 1983)

67. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

68. Defendants Sheriff Small and Undersheriff Brewer, while acting under color of state law, conspired with one another to shoot Steven Myers with a beanbag round during his arrest.

69. While walking to the house where Steven Myers was located, and less than five minutes before Undersheriff Brewer shot and killed Mr. Myers, Sheriff Small's body camera captured Sheriff Small telling Undersheriff Brewer "A little luck and he'll just pass out and die."

70. After Sheriff Small located Steven Myers in the shed, he led the K-9 away from Mr. Myers while instructing Undersheriff Brewer to move forward and confront Mr. Myers with the shotgun loaded with beanbag rounds.

71. Sheriff Small was just exiting the front door of the residence with the K-9 when Undersheriff Brewer fired the shotgun from near the back door. Sheriff Small, unfazed, told the homeowner who was standing on the front porch, "Beanbag rounded him."

72. Just after the shooting, Sheriff Small is recorded telling another officer "Shot him with a beanbag round. Hadn't shot anybody with it yet." Sheriff Small then disabled his body camera.

73. As the Coroner asked questions at the scene, Sheriff Small instructed a deputy "Don't tell him everything."

74. The conspiracy had an unlawful purpose to use excessive force against Steven Myers in violation of his Fourth and Fourteenth Amendment rights.

75. Undersheriff Brewer engaged in an unlawful overt act when he shot Steven Myers in furtherance of the goal of the conspiracy.

76. The conspiracy was the proximate cause of Steven Myers's injury and death.

77. Steven Myers's right to be free from the use of excessive deadly force, and his right not to be deprived of his life without due process of law, were clearly established at the time of Defendants' conduct.

78. Defendants' conduct was with reckless or callous indifference to Mr. Myers's federally-protected rights.

WHEREFORE, Plaintiff Kristina Myers, as Administrator of the Estate of Steven P. Myers, prays for relief as set forth herein.

### Count IV – Civil Right to Familial Relationship (42 U.S.C. § 1983)

79. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

80. Defendants, acting under color of state law, shot and killed Mr. Myers without lawful justification, thereby depriving his wife, Kristina Myers, and children K.D.M., C.F.M., and K.J.M., their civil rights to a familial relationship with their husband or father, respectively.

81. Defendants' conduct was with reckless or callous indifference to Plaintiffs' federally-protected rights.

WHEREFORE, Plaintiff Kristina Myers, individually and as natural mother and legal guardian of K.D.M., C.F.M., and K.J.M., prays for relief as set forth herein.

### Count V – Wrongful Death (K.S.A. § 60-1901 *et seq.*)

82. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

83. Defendants owed Steven Myers a duty to use only reasonable force, if any force was necessary at all, to affect his arrest.

84. Defendant Undersheriff Brewer breached that duty when he shot and killed Steven Myers under circumstances where no reasonable officer would have done so.

85. Defendant Sheriff Small breached the duty owed to Steven Myers by failing to adequately train and supervise Defendant Undersheriff Brewer in the appropriate use of beanbag shotgun rounds, which failure proximately led to Steven Myers's death.

86. Defendant Sheriff Small breached the duty owed to Steven Myers by failing to use appropriate force to affect his arrest, namely, deploying the K-9 if necessary rather than his Undersheriff armed with a 12-gauge shotgun.

87. Defendants, by their actions alleged herein, proximately caused the death of Steven P. Myers.

88. Defendants' conduct was with reckless or callous indifference to the consequences.

89. Plaintiffs Kristina Myers, K.D.M., C.F.M., and K.J.M. are heirs at law of the deceased, Steven P. Myers.

90. Plaintiffs Kristina Myers, K.D.M., C.F.M., and K.J.M. have suffered damages due to the wrongful death of Steven P. Myers, including but not limited to:

   a. Mental anguish, suffering, or bereavement;
   b. loss of society, companionship, comfort, or protection;
   c. loss of marital care, attention, advice, or counsel;
   d. loss of filial care or attention;
   e. loss of parental care, training, guidance, or education; and
   f. reasonable funeral expenses for the deceased.

WHEREFORE, Plaintiff Kristina Myers, individually and as natural mother and legal guardian of K.D.M., C.F.M., and K.J.M., prays for relief as set forth herein.

### Prayer for Relief

Plaintiffs pray for relief against Defendants Small and Brewer as follows:

1. For general and non-economic damages in a sum to be determined at trial;

2. For special damages, including but not limited to lost income and *Wentling* damages, in a sum to be determined at trial;

3. For reasonable funeral and burial expenses;

4. For punitive and exemplary damages in amounts to be determined at trial;

5. For reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

6. For costs and interest as allowed by law;

7. And for such other relief as the Court deems just and proper.

### Jury Demand

Plaintiffs hereby demand trial by jury on all claims so triable.

### Designation of Place of Trial

Pursuant to Local Rule 40.2, Plaintiffs designate Kansas City as the place of trial.

Respectfully submitted:

*/s/ Michael J. Kuckelman*

| | |
|---|---|
| Michael J. Kuckelman | KS #14587 |
| Michael T. Crabb | KS #24395 |

Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Suite 250
Overland Park, KS 66211
913-948-8610 (phone)   913-948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com

*Attorneys for Plaintiffs*