KRISTINA MYERS, individually, and as    )
administrator of the Estate of           )
STEVEN P. MYERS, and as natural     )
parent and legal guardian of K.D.M., C.F.M., )
and K.J.M., minors,               )
               Plaintiffs,     )
                         )
     vs.                  )     CASE #: 17-cv-2682-CM-JPO
                         )
VIRGIL BRWER, individually and in his  )
official capacity as Undersheriff of Barber  )
County, Kansas,               )
                         )
LONNIE SMALL, individually and in his  )
official capacity as Sheriff of Barber     )
County, Kansas,               )
               Defendants.    )

## MEMORANDUM IN SUPPORT OF
## VIRGIL BREWER'S
## MOTION TO DISMISS

### INTRODUCTION

This case arises out of the deployment of a beanbag, in connection with the arrest of plaintiffs' decedent, Steven Myers, for brandishing a shotgun and threatening patrons of a bar.

After 911 was called, Myers left the bar and the officers who responded began searching house to house for him. Some of the officers armed themselves with deadly force. Undersheriff Brewer armed himself with a beanbag gun. While Sheriff Small, Undersheriff Brewer and a deputy were looking for Myers in someone else's house, he was observed in a shed 15 feet behind the house. Myers came out of the shed and the officers shouted at him to raise his hands and get on the ground.

Myers did neither, yelling belligerently: "Fuck you, Lonnie, you mother fucker! What the fuck am I in trouble for? ... You Chicken Shit." Undersheriff Brewer was the nearest officer, attempting to exit the house as the commands were yelled. When Myers was 6-8 feet from him, Undersheriff Brewer deployed a beanbag. Though intended to be non-lethal, the beanbag struck Myers in the chest and he died at the scene despite attempts to save his life.

The Complaint asserts that Undersheriff Brewer violated plaintiffs' constitutional and state law rights by deploying the beanbag at Myers (ECF-1, ¶ 55) and conspiring with Sheriff Small to shoot Myers with the beanbag. (ECF-1, ¶ 68.) Although it is not clear, plaintiff may also be attempting to assert a claim for failing to personally provide first aid (ECF-1, ¶ 64).[1]

Undersheriff Brewer is entitled to on order of dismissal of all claims on the basis of qualified immunity. The Complaint fails to state facts showing that Undersheriff Brewer's conduct, in the tense and rapidly evolving situation, in which he was closely confronted by a belligerent and non-compliant man who had been brandishing a gun on main street, violated any clearly established right of the plaintiffs.

Undersheriff Brewer is further entitled to dismissal of the claim of conspiracy as plaintiffs have failed to plead any facts that would meet the high burden required to plead such a claim.

Finally, the court should dismiss the state law claims to permit them to be pursued in state court, should plaintiffs so choose.

---

[1]Plaintiffs also sue Brewer in his official capacity. An official capacity claim is a claim against the employer, which, in this case, is the Sheriff. The reasons why the official capacity claim should be dismissed are, therefore, addressed by the Sheriff . (ECF-14, § II, B, pp. 21-23.) The eleventh amendment applies to official capacity claims of the Undersheriff as well as the Sheriff. Under Kansas law, the Sheriff is required to appoint an Undersheriff, who serves at his pleasure and immediately succeeds to the office of Sheriff upon a vacancy in that office. K.S.A 19-803 and 804.

# STATEMENT OF FACTS[2]

1.      On October 6, 2017, The Barber County Sheriff's Office received a call that

Myers was in the street in front of a bar in Sun City, Kansas with a shotgun. (ECF-1, ¶ 16; 911 Call

Audio, 0:13-0:38.)

2.      The 911 caller stated that Myers "has gotta gun on Main Street an' threatenin'

us... he's drunk and he's crazy.  Get out here... This is serious stuff, kid, whoever you are, man."

(911 Call Audio 0:13- 2:25.)[3]

3.      Sheriff Small, Undersheriff Brewer and two other Barber County Deputies

responded to the call.  (ECF-1, ¶ 18.)

4.      Officers from the Pratt County Sheriff's office also responded.  (ECF-1, ¶ 20.)

5.      By the time officers arrived in Sun City, Myers had left the bar area.  (ECF-1, ¶

23.)

6.      The officers then began a house to house search for Myers.  (ECF-1, ¶ 24.)

7.      The body and dash cam videos show the officers searching house to house.  (ECF-1,

¶ 25.)[4]

---

[2]Since this is a motion to dismiss, the well pled facts set forth in the Complaint and the videos and tapes referenced therein are taken as true, for purposes of this motion.  These facts, therefore, are based upon what plaintiffs have alleged.  However, these facts do not include mere conclusions or speculative assertions.  Nor do they include allegations that are plainly contradicted by the video and audio recordings referenced in the Complaint and properly considered by the court.

[3]Citations to the audio and videos are to the exhibits filed conventionally by Sheriff Small. (ECF-12, 15, 16.)

[4]Generally, a court considers only the contents of the Complaint when ruling on a 12(b)(6) motion. Exceptions to this general rule include documents incorporated by reference in the Complaint and documents referred to in and central to the Complaint, when no party disputes its authenticity.  "If a plaintiff does not incorporate by reference or attach a document to its Complaint, but the document is referred to in the Complaint and is central to the plaintiff's claim, a defendant may submit an

8.     The Complaint also alleges that Myers had gone home, put up his gun and walked his dog, however, the Complaint does not allege that Undersheriff Brewer or any other officer was aware of this or had any reason not to believe they were looking for an intoxicated man who was still armed and dangerous.

9.     Undersheriff Brewer armed himself with a shotgun holding beanbag rounds. (ECF-1, ¶¶ 37, 41, 63.)

10.     A beanbag round is intended to be less-lethal when used appropriately. (ECF-1, ¶ 37.)

11.     As they searched one residence, shotgun shells were observed lying on a table and a large cache of long guns hanging on the walls.  (Sheriff Small Body Camera video, 14:20-14:53, 15:10-25.)[5]

12.     Sheriff Small, Undersheriff Brewer and a deputy entered a house at 201 W. Main through the front door and searched it. (ECF-1, ¶ 27.)

13.     While the officers were in the  house, Myers was spotted in a shed in the backyard. (ECF-1, ¶ 28.)

14.     The shed was approximately 15 feet from the house.  (ECF-1, ¶ 28.)

15.     Sheriff Small shouted for Myers to come out of the shed.  (ECF-1, ¶ 29.)

---

indisputably authentic copy to the court to be considered on a motion to dismiss."  *Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1146 (10th Cir. 2013); *Estate of Ronquillo v. City and County of Denver,* No. 16-1476, 2017 WL 6422542, at *2 (10th Cir. Dec. 18, 2017); *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.,* 680 F.3d 1194, 1201 (10th Cir. 2011).  It is unfair to allow a plaintiff to selectively or falsely describe a a document, without attaching it.  *See, GFF Corp v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384-85. (10th Cir. 1997.)

[5]The references to times on the videos will be to the time stamp in the bottom left corner referencing "Z" time.

16.     Sheriff Small indicated for Undersheriff Brewer and the deputy to move to the back door and confront Myers.  (ECF-1, ¶ 30.)

17.     Undersheriff Brewer and the deputy began shouting: "Put your hands up!" and "Get on the ground!"  (ECF-1, ¶ 33.)

18.     Myers shouted: "Fuck you, Lonnie, you mother fucker! What the fuck am I in trouble for? ... You Chicken Shit."  (Small Video, 8:46-9:02; Suchy Video, 22:50-23:07.)

19.     The commands to raise his hands and get on the ground were given for approximately eight seconds before the beanbag was deployed.  (ECF-1, ¶ 36.)

20.     Myers did not put his hands up or get on the ground.  (ECF-1, ¶ 34; Suchy Video, 22:50-23:07.)

21.     At the time the beanbag was deployed, Undersheriff Brewer was attempting to exit through the doorway of the residence t reach Myers.  (Suchy Video, 22:50-23:07.)

22.      The door way had a screen door that opened out on the right and would swing shut on its own. (Suchy Video, 22:50-23:07.)

23.     When Myers stepped out of the shed, he was 15 feet from the house. (ECF-1, ¶ 28.)

24.     When the beanbag was deployed after eight seconds of shouting commands, Myers was 6-8 feet from Undersheriff Brewer. (ECF-1, ¶ 36 and 49.)

25.     After being struck with the bean bag, Myers said "Ow and went down on the ground face first.  (ECF-1, ¶ 39.)

26.     Undersheriff Brewer then approached and handcuffed Myers.  (ECF-1, ¶ 40.)

27.     When Myers was rolled over, it was discovered that he was bleeding. (ECF-1, ¶

40.)

28.    The officers at the scene called for EMS.  (ECF-1, ¶ 47)

29.    The call for EMS was made in less than a minute after the beanbag was deployed. (Suchy Video, 23:30-23:40.)

30.    A deputy began CPR while another attempted to apply pressure to the wound. (ECF-1, ¶¶ 43-44.)

31.    Attempts to revive Myers failed and he died at the scene. (ECF-1, ¶ 48.)

## QUESTIONS PRESENTED

1.    Whether Undersheriff Brewer is entitled to qualified immunity.

    a.    Whether the facts plead in the Complaint state a claim that Undersheriff Brewer violated any of plaintiff's constitutional rights.

    b.    Whether any such right was "clear established."

2.    Whether the Complaint states a claim for conspiracy.

3.    Whether plaintiffs' state law claims should be dismissed.

## ARGUMENT AND AUTHORITY

### I.    Applicable Pleading Standards

Although, in considering a motion under Rule 12(b)(6), the well pled facts of the Complaint are taken as true, this rule is tempered by the principal that "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The specific factual allegations must be enough to "nudge" the claim across the line from

conceivable to plausible.   Pleading facts that are merely "consistent with"  a defendant's liability, stop short of the line between possible and plausible entitlement to relief. *Moore v. Summer,* No. 12-3204-SAC, 2015 WL 1470290, at *2-3 (D. Kan. Mar. 31, 2015) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.  544, 555 (2007.))  Plaintiffs "must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming,* 656 F.3d at 1214, (Quoting *Twombly*.)  The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the Complaint must give the court reason to believe that [these plaintiffs have] a reasonable likelihood of mustering factual support for these claims." *Ridge at Redhawk, LLC. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007.)

Adherence to these standards is necessary to a just speedy and inexpensive determination of claims – as required by Federal Rule of Civil Procedure 1 –  and it prevents "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming,* 656 F.3d at 1215.

The *Twombly* standard is especially important when, as here, the claims involve individual government actors with qualified immunity.  These pleading standards "appropriately reflect the special interest in resolving the affirmative defense of qualified immunity 'at the earliest stage of a litigation.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).   Qualified immunity "is both a defense to liability and a limited 'entitlement not to stand trial or face the burdens of litigation.'" *Estate of Redd. v. Love,* 848 F.3d 899, 908 (10th Cir. 20170 (quoting *Ascroft*, 556 U.S. at 672) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).  Unless the plaintiffs are required to "make clear the 'grounds'" on which they are entitled to relief, "it would be impossible for the Court to perform its function of determining, at an early stage in the litigation, whether the asserted

claim is clearly established." *Robbins*, 519 F.3d at 1249.

## II.     Undersheriff Brewer is entitled to qualified immunity.

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities. *Hidahl v. Gilpin County Dep't of Social Services,* 938 F.2d 1150, 1155. This defense provides "protection to all but the plainly incompetent and those who knowingly violate the law." Id., quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986.) The United States Supreme Court has noted that this immunity provides "breathing room to make reasonable but mistaken judgments." *Ashcroft*, 563 U.S. at 743. This is true whether the mistake is one of fact, one of law or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231(2009.)

Once a qualified immunity defense is asserted, the burden shifts to the plaintiffs to meet a "heavy two-part burden." *Marin v. King*, 2018 U.S. App. LEXIS 100, *27 (10th Cir, 2018) (quoting *Estate of Redd. v. Love,* 848 F.3d 899, 908 (10th Cir. 2017.)) To meet this heavy burden, plaintiffs must show that their constitutional rights were infringed, and that such rights were clearly established at the time of the alleged infringement. Although a plaintiff must establish both elements, the Court may consider the elements in any order. *Pearson*, 555 U.S. at 223. Failure of the plaintiff to meet this heavy burden "calls for entry of judgement in favor of the defendants who have plead the defense." *Hidahl,* at 1155; *Lutz v. Weld County School Dist. No. 6*, 784 F2d 340 (10th Cir. 1986.)

The first part of the test requires plaintiffs to establish that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) .

Second, even if the plaintiff establishes that a constitutional right was violated, plaintiffs must also show that the violated right was clearly established. *Cortez*, 478 F.3d at 1114.

To  meet the "clearly established" burden, plaintiffs must show that there is pre-existing

precedent in the form of "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Cortez*, 478 F.3d at 1114-15 (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). The pre-existing precedent must place the "constitutional question beyond debate." *Yeasin v. Durham*, 2018 U.S. App. LEXIS 333, **13-14 (10th Cir. 2018)(quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

While plaintiffs are not required to supply a case directly on point, they "must do more than cite case law announcing a legal rule 'at a high level of generality.'" Id., at *14 (quoting *White v. Pauly,* 137 S. Ct. 548, 552 (2017)). The relevant case law must be particularized to the facts of this case. Id. The precedent must make it sufficiently clear "that *every* reasonable official" would have known that what he is doing violates the right. *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ascroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). (Emphasis added.)

### A.     Plaintiffs have failed to allege a violation.

In the context of a claim of excessive force, qualified immunity turns on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Love,* 848 F.3d at 906-07 (quoting *Thomson v. Salt Lake County,* 584 F.3d 1304, 1313 (10th Cir. 2009)) (quoting *Graham v. Conner,* 490 U.S. 386, 397 (1989.)) Relevant factors include: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Love,* 848 F.3d at 907; *Graham*, 490 U.S. at 396. In the context of qualified immunity these factors must be considered in the light of the "breathing room" afforded officers to make reasonable mistakes while making split

second judgments in "tense, uncertain and rapidly evolving situations." *Graham,* 490 U.S. at 397.

The facts pled in the Complaint establish that, at the time Undersheriff Brewer deployed the beanbag, he had been called to a situation involving an intoxicated Myers who was threatening patrons of a bar in Sun City with the deadly force of a shotgun. By the time the Undersheriff arrived, Myers had left. It was not known where he had gone, whether he still had the gun and how he would react when found. A house to house search began. Though a house to house search for an intoxicated man with a shotgun is a very dangerous job, Undersheriff Brewer armed himself with a "less lethal" beanbag gun.

When Myers was located, he was hiding in a shed behind another citizen's house. He was ordered by the Sheriff to come out of the shed and did. But characterizing this as "compliance" is belied by the fact that, when he came out of the shed, he was 15 feet away yet, by the time the beanbag was deployed, after 8 seconds of shouted commands to raise his hands and get on the ground, Myers had closed the distance to 6-8 feet, refused to keep his hands in the air or get on the ground and was still on his feet with his hands down. The videos referenced in the Complaint show that he was belligerently shouting obscenities as well.

As Myers advanced shouting obscenities and refusing to comply, Undersheriff Brewer was attempting to exit the house. The screen door of the house opened outward, cutting of any movement to the right as he moved through he doorway. Following closely behind him was a deputy. This situation is recognized as a "fatal funnel," "which presents a unique risk of attack to police officers." *Gray v. Kern,* 124 F. Supp. 3d 600, 607 (D. Maryland 2015). Just 6-8 feet in front of him – close enough to attack suddenly – was a belligerent man who had recently threatened people with a shotgun, had advanced toward the officers while yelling obscenities and was not complying

with the orders to get on the ground or raise his hands.

In his hands, Undersheriff Brewer held, a "less lethal" beanbag gun. In this "tense, uncertain and rapidly evolving situation," the Undersheriff was facing a "unique risk of attack and was forced to make a split second judgement. He deployed a beanbag in an attempt to bring the situation to an end without anyone being seriously injured.

The constitution does not require that officers use the least intrusive means. It only requires reasonable ones. *Fisher v. City of Las Cruces,* 584 F.3d 888, 894 (10th Cir 2009); *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). Requiring only the least intrusive means would "unduly hamper the police's ability to make swift, on the spot decisions ... and require courts to engage in unrealistic second guessing." *United States v. Sokolow,* 490 U.S. 1, 11 (1989.)

Moreover, the determination of the reasonableness of the amount of force used in a particular situation must not be made "with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396; *Estate of Larsen v. Murr,* 511 F.3d 1255, 1259-60 (10th Cir. 2008.) This is because "police officers are often forced to make split judgements in – circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 397.

An officer is not required to await an actual attack before using force.

> Even "'[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed.' [ *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)] (quoting Saucier, 533 U.S. at 205). A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is 'often . . . too late to take safety precautions.' *People v. Morales*, 198 A.D.2d 129, 603 N.Y.S.2d 319, 320 (N.Y. App. Div. 1993).

*Estate of Larsen*, 511 F.3d at 1260.

Under the circumstances as alleged in the Complaint, it cannot be said that *every* officer

-11-

would have known that, in this dangerous, uncertain, tense and rapidly evolving situation, discharging even a lethal fire arm – much less deploying a less lethal beanbag – would violate plaintiff's rights.

It was clearly reasonable for Undersheriff Brewer to regard Myers as actively resisting arrest and "likely to fight back" when he advanced yelling obscenities and refused to follow commands. *Dixon v. Richer,* 922 F.2d 1456, 1462 (10th Cir. 1991) (swearing at officers could reasonably be perceived as resistance.) It was also reasonable to regard Myers as a threat to Brewer and "likely to fight back", particularly since Brewer had no where to go if the belligerent man just in front of him, who had closed the distance to a mere 6-8 feet and was still being belligerent, suddenly attacked. Brewer was not required to see a glint of steel or await an actual attack before defending himself, particularly with what was intended to be less than lethal force.

Thus, the second and third *Graham* factors cut in favor of immunity. The first *Graham* factor also cuts in favor of immunity. The crime for which Myers was being sought – threatening citizens in a public place with a shotgun- was clearly severe.

Plaintiffs have failed to state a claim of unreasonable use of force under all the circumstances. Undersheriff Brewer is entitled to a dismissal of this claim against him.

To the extent that plaintiffs are attempting to assert a separate claim for failure to personally provide aid, such claim lacks merit. They do not allege no such aid was given but only that the defendants did not, themselves provide it. The Complaint affirmatively alleges that such aid was given by two deputies. Notably absent from the Complaint is any allegation that the two deputies who were "left" to provide the aid were incompetent in providing first aid or that the outcome would have been any different if Undersheriff Brewer would have provided the aid himself. For these

reasons alone the Complaint fails to state a claim.

But more importantly, there is no legal support for such a claim. The Tenth Circuit has previously ruled that CPR is not "first aid" but is "medical aid " and that an officer has no constitutional duty to provide it. *Wilson v. Meeks,* 52 F.3d 1547, 1555-56 (10th Cir. 1995.)

In *Wilson,* the court also noted that such a claim is to be analyzed under the "deliberate indifference standard" of an Eighth Amendment failure to provide medical care. The allegations in this case do not state a claim for deliberate indifference. Leaving two trained deputies – even if new – to conduct CPR simply is not deliberate indifference. In fact, it could easily be regarded as inappropriate for the officer who deployed the force to be the one to try to render aid. Particularly when other trained and capable officers are available.

The Complaint fails to state a claim for any violation, making dismissal appropriate.

**B.      Plaintiffs have failed to meet the "clearly established" prong of the "heavy burden" they bear.**

Even if the use of lethal force would not be justified in the circumstances presented by this case, it cannot be said that it was "clearly established" that the use of a beanbag round intended to be non lethal,  was unconstitutional under these circumstances.

As recently as October, 2017, a New Mexico court  held the use of beanbags to be appropriate in similar circumstances. *Nelson   v. City of Albuquerque,* 2017 U.S. Dist. LEXIS 174079 (D. N.M. October 20, 2017.)  In that case, Nelson had previously threatened another person with a rifle and a knife.  After the police arrived and surrounded the house, Nelson was ordered to come out.  Eventually, he did come out, unarmed and moving slowly towards the officers with his "arms at his sides."  He was ordered to raise his hands but did not comply.  He was yelling and was heard to say "Get the fuck out of here."  Even though he was not armed with the rifle or knife seen

previously, it was unknown whether he might have a smaller gun in his pocket or waist band. He stopped and when he turned away from the officers, he was hit with 5 beanbag rounds, a wooden baton round and a flash bang. The Court concluded that, "[g]iven the facts that Nelson had threatened his friend with weapons, potentially had a weapon, and acted with hostility or resisted the police's attempts to arrest him" it was reasonable to conclude the plaintiff posed an immediate threat and was resisting arrest and that the use of the beanbags, baton rounds, flash bang and a dog was reasonable. *Nelson,* at *121. The court ultimately held that the officers were entitled to qualified immunity for the use of the bean bags, batons and flashbang. Id. at *135. While this is not binding precedent, it does demonstrate that even a court with far more than a few seconds, and in the comfort of its office, could reasonably conclude that the deployment of a beanbag under similar circumstances is reasonable. This precludes a finding that *no* reasonable officer would have known that the use of a beanbag in this situation was a violation, precludes a finding that such was clearly established in the Tenth Circuit, and places Undersheriff Brewer's conduct well within the "breathing room" afforded officers and qualified immunity.

There is no Supreme Court or Tenth Circuit precedent holding that the use of beanbags constitutes lethal force. The Complaint in this case alleges that beanbags are intended to be less than lethal. Therefore, for purposes of qualified immunity, Undersheriff Brewer was not required to make his split second judgment as if lethal force was being used. Plaintiff does not and cannot allege that Undersheriff Brewer intended the beanbag to be lethal. Even though it turned out that way, the mistaken belief that only non lethal force was being used was a reasonable one.

This is particularly true when, as here, Undersheriff Brewer suddenly found himself in fatal funnel in a tense uncertain and rapidly evolving situation. It simply cannot be said the state of the

law was such that *every* reasonable officer would have known, in the few seconds Brewer had to think about it, that the deployment of a single beanbag round would violate the constitution.

While plaintiffs may be able to make an argument for not deploying the beanbag, it cannot be said that the question is beyond debate or that no reasonable person could disagree. When due deference is given to the "tense uncertain and rapidly evolving situation" with which Undersheriff Brewer was suddenly faced, and the "breathing room" afforded officers, Undersheriff Brewer is entitled to qualified immunity and a dismissal of the excessive force claim against him.

To the extent plaintiffs are attempting to assert a claim for failure to personally provide medical care, plaintiffs will be unable to point to authority sufficient to make it "clearly established in this Circuit that *every* reasonable officer would have known that it was his constitutional duty to push the deputies aside and personally be the one to attempt resuscitation. *Wilson v. Meeks, supra.,* is still good law and defeats such a claim.

### III.     The allegations of the Complaint fail to allege that Undersheriff Brewer participated in a conspiracy to violate a clearly established constitutional right of any plaintiff.

A federal conspiracy action under 1983 requires a deprivation of a constitutional right and "a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants or a general conspiratorial objective" to accomplish that deprivation.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir, 2010.)  Mere conclusory allegations of conspiracy are not sufficient.  Id.  An allegation of parallel action is not sufficient.  Id.  Under the *Iqbal/Twombly* pleading standard above, the allegations of the Complaint must be sufficient to exclude lawful activity.

As discussed above (pp. 9-13), plaintiffs have failed to state a claim that Undersheriff

Brewer violated any constitutional right. For the same reasons, he cannot be found to have conspired to do so.

In addition, there are no facts pled in the Complaint that point to a meeting of the minds or a conspiratorial objective to deploy the beanbag, while excluding lawful conduct or merely parallel conduct.

All that is alleged is exactly the type of activity that routinely occurs in police encounters absent any conspiracy to work a depravation of constitutional rights.

The conspiracy count, therefore, fails to state a claim and must be dismissed.

**III.    State law claims**

Lonnie Small has fully briefed dismissal of the state law claims on the grounds of KCTA immunity and 28 U.S.C. § 1367( c). (ECF-11, §§ II, C, 2-3, pp 24-25.) That will not be repeated here but is incorporated by reference. For the same reasons, the court should dismiss the state law claims against Undersheriff Brewer.

**CONCLUSION**

For the foregoing reasons, Undersheriff Brewer is entitled to a dismissal of all claims against him.

WATKINS CALCARA, CHTD.

/s/    ALLEN G. GLENDENNING
          Allen G. Glendenning, #12187
          1321 Main - Suite 300
          P.O. Drawer 1110
          Great Bend, Kansas 67530
          (620) 792-8231; aglenden@wcrf.com
          Attorneys for Defendant, Virgil Brewer

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of January, 2018, I electronically filed the above and foregoing Memorandum in support of Virgil Brewer's Motion to Dismiss with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: Michael Kuckelman, Michael Crabb, Toby Crouse and Jeffrey Jordan

/s/      ALLEN G. GLENDENNING

Allen G. Glendenning , #12187
