| | |
|---|---|
| KRISTINA MYERS, individually, and as Administrator of the Estate of STEVEN P. MYERS, and as natural parent and legal guardian of K.D.M., C.F.M., and K.J.M., minors, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 17-cv-02682-CM-JPO ) |
| VIRGIL BREWER, individually and in his official capacity as Undersheriff of Barber County, Kansas, | ) ) ) ) |
| LONNIE SMALL, individually and in his official capacity as Sheriff of Barber County, Kansas, | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT BREWER'S MOTION TO DISMISS (DOC. 17)**

Michael J. Kuckelman    KS #14587
Michael T. Crabb    KS #24395
Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Suite 250
Overland Park, KS 66211
913-948-8610 (phone)    913-948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com

*Attorneys for Plaintiffs*

{00529832}

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................1

III. STANDARD OF REVIEW ...................................................................................1

    A. The Court must assume all of Plaintiff's allegations are true and draw all reasonable inferences in her favor. ...................................................................1

    B. The Court must either disregard matters outside the pleadings or treat this motion as one for summary judgment. ............................................................2

IV. ARGUMENT AND AUTHORITIES ...................................................................4

    A. Brewer is not entitled to qualified immunity. ..................................................4

        1. Brewer's alleged conduct was objectively unreasonable and therefore violated Steven Myers's Fourth Amendment rights. ...................5

            a. Brewer used deadly force to seize Steven Myers. .........................5

            b. Application of the remaining *Graham v. Connor* factors do not justify the use of deadly force against Steven Myers. ...............8

        2. Steven Myers's right to be free from unreasonable deadly force when he was unarmed and compliant was clearly established at the time. ..................................................................................................11

    B. The conspiracy allegations state a plausible claim upon which relief can be granted. ...........................................................................................................14

    C. The pendent wrongful death state law claims and official capacity claims should proceed. ..............................................................................................15

V. CONCLUSION ....................................................................................................15

I.  INTRODUCTION

The U.S. Supreme Court stated the obvious in 1985: "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Undersheriff Brewer did just that. Brewer killed unarmed and non-dangerous Steven Myers by callously firing a 12-gauge shotgun at Steven's chest at point-blank range. Brewer's euphemism—that he "deployed a beanbag"—is as hollow as his claim of immunity.

Kristina Myers is entitled to her day in court. The Court should deny Brewer's motion to dismiss (Doc. 17).

II.  STATEMENT OF FACTS

For her statement of the facts, Mrs. Myers adopts and incorporates the facts as set forth in her Complaint (Doc. 1).

III.  STANDARD OF REVIEW[1]

### A. The Court must assume all of Plaintiff's allegations are true and draw all reasonable inferences in her favor.

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must assume all well-pleaded facts are true and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

---

[1] This section is identical to the Standard of Review section appearing in Plaintiffs' Memorandum in Opposition to Defendant Small's Motion to Dismiss (Doc. 24).

{00529832}  1

When reviewing the sufficiency of the plaintiff's complaint, the issue is not whether the plaintiff will prevail, but whether she is entitled to offer evidence to support her claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Granting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

### B. The Court must either disregard matters outside the pleadings or treat this motion as one for summary judgment.

"The court's function on a Rule 12(b)(6) motion is not to weigh evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). "When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Okla.*, 382 F.3d 1206, 1214 (10th Cir. 2004)); *see also* Fed. R. Civ. P. 12(d).

Here, Defendants have presented copies of body and dash camera recordings and audio from a 911 call for the Court's consideration with this Rule 12(b)(6) motion. Defendants argue that Tenth Circuit precedent allows a court to consider documents referenced in a Complaint instead of relying on characterizations of those documents when deciding a Rule 12 motion.

Defendants incorrectly cite *Scott v. Harris*, 550 U.S. 372 (2007), for the proposition that a Court may consider copies of videos mentioned in a Complaint when deciding a motion to

dismiss. But *Scott v. Harris* held that a court may consider video to challenge a plaintiff's version of the facts at the *summary judgment stage*, not at the pleading stage. *Id.* at 380.

Judge Crabtree confronted this very issue several months ago and correctly declined to consider police body camera footage presented by defendants with their motion to dismiss on qualified immunity grounds. *See McHenry v. City of Ottawa*, No. 16-2736-DDC-JPO, 2017 WL 4269903, *3-4 (D. Kan. Sept. 26, 2017). The Court noted that while doing so may be appropriate on a motion for summary judgment, the reasoning applied in *Scott v. Harris* does not fit a motion governed by the 12(b)(6) standard:

> On a motion to dismiss, the court cannot compare the evidence that will govern the case at trial or even judge the motion by the summary judgment facts. The court cannot evaluate competing evidence to discern whether a genuine factual issue exists. Instead, the court must accept the facts pleaded by the non-moving party and draw any reasonable inferences in that party's favor.

*Id.* at *4 (citing *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012)).

Here, Defendants are similarly attempting to try the case at the pleading stage. They cite the video and audio to raise new allegations and matters that do not appear in the Complaint. For example, Defendants refer to hearsay statements made to 911 by a slurring bar patron (with whom Defendants never spoke before hunting down and shooting Steven Myers), they say Steven Myers swore at Defendants, and they describe a screen door creating what they call a "fatal funnel" situation for Brewer.

None of these things appear in the Complaint, yet they underpin Brewer's assertion of qualified immunity. The Court must not attempt to evaluate competing evidence at this juncture before any discovery has occurred. Instead, the Court's sole focus must be on the sufficiency of Plaintiff's allegations in the Complaint.

Alternatively, the Court may use its discretion to consider matters outside the pleadings, but must then treat the motion as one for summary judgment:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

Should the Court so convert the motion, it should either deny the motion due to the existence of material fact issues or defer consideration of the motion and allow the parties to conduct discovery. *See* Fed. R. Civ. P. 56(d). It goes without saying that without discovery, Plaintiff will have had no opportunity to present all the facts essential to her opposition. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) ("A qualified immunity defense will not succeed in inducing a court to grant summary judgment when 'the facts ..., considered collectively, present an incomplete picture of the [relevant] circumstances.'").

## IV. ARGUMENT AND AUTHORITIES

### A. Brewer is not entitled to qualified immunity.

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). In deadly force cases such as this one, the law has long been clearly-established that "it is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.'" *Id.* (quoting *Tennesee v. Garner*, 471 U.S. 1, 11 (1985)).

Here, taken in the light most favorable to Plaintiff, the facts alleged show that Brewer shot and killed Steven Myers when he was unarmed and posing no threat of attack or flight.

**1. Brewer's alleged conduct was objectively unreasonable and therefore violated Steven Myers's Fourth Amendment rights.**

"Because the reasonableness inquiry overlaps with the qualified immunity analysis, 'a qualified immunity defense [is] of less value when raised in defense of an excessive force claim.'" *Olsen*, 312 F.3d at 1314 (quoting *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001). "Whether an officer acted reasonably in using deadly force is 'heavily fact dependent.'" *Id.* (quoting *Romero v. Board of County Comm'rs,* 60 F.3d 702, 705 n.5 (10th Cir. 1995)).

Brewer argues that his decision to fire a shotgun at Steven Myers's chest from point-blank range was reasonable under the *Graham v. Connor* factors. In that case, the U.S. Supreme Court noted that "determining whether the force used to effect a particular seizure is 'reasonable' requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989).

Thus, Brewer's decision to use deadly force against Steven Myers must be balanced against "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

**a. Brewer used deadly force to seize Steven Myers.**

Despite Brewer's euphemistic treatment of the facts, a shotgun beanbag round fired at close range absolutely constitutes the use of deadly force. *See Tenorio v. Pitzer*, No. CV 12-01295 MCA/KBM, 2014 WL 11429062, at *4 (D.N.M. May 28, 2014), *aff'd*, 802 F.3d 1160 (10th Cir. 2015) ("Due to the limited space within the living room, the bean bag rounds were not a non-lethal option.").

"Deadly force includes 'force that the actor uses with the purpose of causing or that he knows to create a substantial risk of causing death or serious bodily harm,' including '[p]urposefully firing a firearm in the direction of another person.'" *King v. Hill*, 615 F. App'x 470, 474 (10th Cir. 2015) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 n.2 (10th Cir. 2004)).

Mrs. Myers specifically alleged in her Complaint that Brewer fired a 12-gauge shotgun beanbag round at Steven's chest from approximately six to eight feet and that firing from such short range presents a well-known risk of death or serious physical injury. Doc. 1, ¶¶ 36-38. For purposes of this motion to dismiss, the Court must assume all well-pleaded facts are true. *Kaw Tribe*, 952 F.2d at 1187. If Brewer wishes to challenge the veracity of that allegation, a motion to dismiss is not the place to do it.

Throughout Brewer's brief in support of his motion to dismiss, he refers to the weapon he used to kill Steven Myers as a "beanbag gun." *E.g.*, Doc. 18, pp. 1, 10, 11. He alternately characterizes it as "less lethal," "less-than-lethal" and "non-lethal." *E.g.*, *id.* pp. 2, 10, 11, 13, 14.

This is at best loose langauge or at worst intentional duplicity, because Brewer is not alleged to—and did not in reality—fire a "beanbag gun." The following table illustrates the stark difference between a "beanbag gun" and beanbag rounds fired from a shotgun.

| **Beanbag Gun** | **Beanbag Shotgun Rounds** |
| --- | --- |
| Billed as "non-lethal" | Billed as "less-lethal" |
| Projectiles expelled at 135 feet per second | Projectiles expelled at 250 to 300 feet per second |
| Knockdown power up to 20 feet away | Optimal less-lethal range is 21-50 feet; known to be lethal at range of 10 feet or less |
| Dedicated device powered by compressed air canister | Fired from standard 12-gauge shotgun |



This video still clearly confirms Plaintiff's allegation that Brewer fired a shotgun, not a "beanbag gun":



*Figure 1: Brewer standing over Steven Myers moments after shooting him in the chest from point-blank range with a 12-gauge shotgun loaded with beanbag rounds. Suchy Video, 00:23:20Z.*

Brewer purposefully fired a firearm at Steven Myers that he knew or should have known was likely to result in death or serious bodily harm. He thus used deadly force. *See King*, 615 F. App'x at 474.

### b. Application of the remaining *Graham v. Connor* factors do not justify the use of deadly force against Steven Myers.

Having established that Brewer used deadly force to seize Steven Myers, the next question is whether such force was reasonably necessary given the "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Given the applicable 12(b)(6) standard, the Court must analyze these factors on the basis of allegations found in the Complaint. The Complaint acknowledges that the Barber County Sheriff's Office received a call at 6:26 p.m. that Steven Myers was in the street in front of Buster's Bar in Sun City, Kansas with a shotgun. Doc. 1, ¶ 16. The Complaint does not allege or admit that Steven had threatened anyone, that he was intoxicated, or that he was "acting crazy."

The Complaint goes on to allege that by the time officers arrived 41 minutes later, Steven Myers had left the area. Doc. 1, ¶ 18, 23. He had gone home, put away his shotgun, and taken his dog for a walk. *Id.* ¶ 23. The disturbance initially reported had long since resolved. *Id.*

On these facts, the "severity" of the "crime" at issue was decidedly low. Steven had not threatened or injured anyone. A man openly carrying a firearm in small-town Kansas—as many often do—is not committing a crime.

Even if the Court decides to consider the 911 audio recording presented by Defendants, it is clear that there was no "severe" crime in progress by the time Defendants arrived in Sun City. Even *the reporting party* had left the scene. Defendants talked to no witnesses to corroborate the 911 caller's disjointed story that Steven was "threatening" people before commencing a manhunt that ultimately led to his death.

The Complaint affirmatively alleges that none of the remaining *Graham* factors were an issue (threat to officer safety, resisting arrest, and attempted flight). Steven Myers complied with Sheriff Small's command to come out of the shed and stood unarmed in the middle of the yard. Doc. 1, ¶¶ 32, 34. Mr. Myers did not threaten the officers, brandish a weapon, or attempt to flee. *Id.* ¶ 35. At no time during the encounter was Mr. Myers armed with any weapon. *Id.* ¶ 51. Again, all well-pleaded allegations must be accepted as true for purposes of this motion. *Kaw Tribe*, 952 F.2d at 1187.

But if the Court chooses to consider the videos filed by Defendants, it will only find confirmation of Plaintiff's allegations as shown in the video stills below:



*Figure 2: Seconds after being commanded to come out of the shed, Steven Myers (lower left) stands stationary in the yard with empty hands at his sides. Suchy Video, 00:23:00Z.*



*Figure 3: Steven Myers complies with commands to put his hands up (extreme left of frame). Steven is shot four seconds after this moment. Suchy Video, 00:23:03Z.*

The video confirms that Steven Myers complied with commands to come out of the shed and to put his hands up. It also reveals that once he came out of the shed as commanded, he stood still in the middle of the yard. He was not "closing the distance" toward the officers as Brewer suggested. And he never made any attempt to flee.

Brewer argues that Steven Myers swore at him, which he apparently regarded as a threat justifying the use of deadly force. The case Brewer cites as support for this postition, *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991), is not helpful. *Dixon* is not a deadly force case. There, officers beat and choked Dixon after he swore at them. The Court denied the officers' motion for summary judgment on qualified immunity grounds, finding their conduct was not objectively reasonable. *Id.* at 1462-63. If beating and choking a suspect who swears at officers fails to meet the Fourth Amendment test, then shooting a suspect who swears is beyond the pale.

In the "careful balancing" between the deadly intrusion on Steven Myers's Fourth Amendment rights against the countervailing governmental interests expressed in the *Graham* factors, the scale tips undeniably in favor of Steven Myers. Accepting all well-pleaded allegations as true and drawing all inferences in Plaintiff's favor, the Court should conclude that Mrs. Myers has adequately pleaded a violation of Steven Myers's Constitutional rights.

**2. Steven Myers's right to be free from unreasonable deadly force when he was unarmed and compliant was clearly established at the time.**

Brewer's argument on the "clearly established" prong is based on the fallacious argument that he fired a "non-lethal" weapon. *See King*, 615 F. App'x at 474 ("Deadly force includes … [p]urposefully firing a firearm in the direction of another person."). Brewer even goes so far as to misstate the Complaint by saying "The Complaint in this case alleges that beanbags are intended to be less than lethal." (Doc. 18, p. 14). To the contrary, the Complaint alleges that shotgun beanbag rounds are meant to be a less-lethal weapon *when used appropriately* but that they are deadly when, as here, they are fired from less than 10 feet away at a subject's chest. Doc. 1, ¶¶ 37-38. "Less-than-lethal" means not lethal. "Less-lethal" means lethal under certain circumstances.

Brewer cites a non-binding case out of the District of New Mexico in support of his position. *See Nelson v. City of Albuquerque*, Civ. No. 10-553 JB/DJS, 2017 WL 4776730 (D.N.M. Oct. 20, 2017) (appeal pending). There, after a tortured procedural history, officers were granted qualified immunity after hitting a suspect with five beanbag rounds, a wooden baton round, a flash-bang, and a K-9. But, significantly, the beanbag rounds were fired not from point-blank range but from more than 20 feet away—in the optimal less-lethal range—and did not kill the suspect. *See Nelson v. City of Albuquerque*, Civ. No. 10-553 BB/JBS, 2012 WL 13054496, at *4 (D.N.M. Apr. 11, 2012).

A more apt comparison is found in *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir. 1989):

> In *Zuchel*, the suspect, a homeless man, created a disturbance at a restaurant by kicking the front door and cracking its glass. He then left the restaurant and passed a group of teenagers on bicycles, exchanging heated words with them. The suspect withdrew something from his pocket; the teenagers believed it was a pocket knife. As police officers approached the scene, one or more of the teenagers yelled to the officers that the suspect had a knife. The officers testified that the suspect then moved toward the defendant officer, making threats to kill one of the teenagers, cursing the officer, and telling him "you'll have to kill me."

*King v. Hill*, 615 F. App'x 470, 477 (10th Cir. 2015) (citing *Zuchel*, 890 F.2d at 275)).

There was conflicting testimony about what happened next. Some witnesses claimed the suspect ignored commands to drop the knife and continued to come forward, jabbing in a threatening way. *Zuchel*, 890 F.2d at 275. Others said the suspect neither charged the officer nor stabbed at him. *Id.*

The officer shot the suspect four times, killing him. It turned out the suspect was armed with only a fingernail clipper. The Tenth Circuit, upholding the district court's denial of qualified immunity, held that "this record contains sufficient evidence which, if believed by a trier of fact, could support a finding that [the defendant officer's] conduct was not objectively reasonable." *Id.* at 276.

When Brewer shot and killed Steven Myers, the law was clearly established that an officer may not seize an unarmed, non-dangerous suspect by shooting him dead. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Zuchel*, 890 F.2d at 275. In *Zuchel*, the officer thought the suspect was armed and dangerous. Here, Myers was plainly unarmed and there is no indication that Brewer believed otherwise. If the officer in *Zuchel* was not entitled to qualified immunity, then neither is Brewer.

Moreover, the applicable Kansas statute unambiguously provides that a law enforcement officer is justified in using deadly force *only* when:

- such officer reasonably believes that such force is necessary to prevent death or great bodily harm to such officer or another person, *or*

- when such officer reasonably believes that such force is necessary to prevent the arrest from being defeated by resistance or escape *and*
    - such officer has probable cause to believe that the person to be arrested has committed or attempted to commit a felony involving death or great bodily harm or
    - is attempting to escape by use of a deadly weapon, or
    - otherwise indicates that such person will endanger human life or inflict great bodily harm unless arrested without delay.

K.S.A. § 21-5227 (emphasis and organization added).

The law is clearly established. Brewer was not justified to use deadly force against Steven Myers because he was plainly unarmed, he was not threatening to harm any officer or flee, and he had not harmed anyone else.

Brewer may be attempting to argue that he simply didn't know that firing a beanbag shotgun round at close range would be fatal. In that case, Brewer would be "plainly incompetent" if he didn't understand the deadly capability of his weapon and ammunition, and qualified immunity would offer him no protection from his incompetence. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Accepting all well-pleaded allegations as true and drawing all inferences in favor of Plaintiff, the Court should find that Mrs. Myers adequately pleaded a violation of clearly-established Fourth Amendment jurisprudence, and therefore deny Brewer's motion to dismiss.

**B. The conspiracy allegations state a plausible claim upon which relief can be granted.**

The Complaint states a plausible claim of a conspiracy between Small and Brewer to shoot Steven Myers with a beanbag round, in violation of his Fourth Amendment right to be free from the unreasonable use of deadly force. The Complaint must allege more than a mere possibility that such a conspiracy occurred, but the Court must also accept all well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor.

The key allegations supporting Plaintiffs' conspiracy claim are these:

- While walking to the house where Steven was located, Sheriff Small was recorded muttering to Undersheriff Brewer "A little luck and he'll just pass out and die." Doc. 1, ¶ 69.

- After Sheriff Small commanded Steven Myers to come out of the shed, rather than continue to command the situation, he ordered Brewer to come forward and confront Steven with the shotgun loaded with beanbag rounds. *Id.* ¶ 70.

- Sheriff Small was just exiting the front door when the gun blasted behind him. Without skipping a beat or turning to look, Small told the homeowner on the front porch, "beanbag rounded him." *Id.* ¶ 71.

- Just after the shooting, Sheriff Small was recorded jovially telling another officer "Shot him with a beanbag round. Hadn't shot anybody with it yet." *Id.* ¶ 72.[2]

- As the Coroner asked questions at the scene, Sheriff Small instructed a deputy "Don't tell him everything." *Id.* ¶ 73.

From these allegations, which must be accepted as true for purposes of this 12(b)(6) motion, the Court can reasonably and plausibly infer that Small and Brewer planned in advance to shoot Steven Myers with a shotgun beanbag round. Such a conspiracy would explain why Sheriff Small did not himself confront Myers in the backyard with his K-9 and instead had

---

[2] Plaintiffs' counsel was not provided a copy of the body camera video until after the Complaint was filed. Upon subsequent study of the files, it appears Sheriff Small said "Shot him with a beanbag round. Max is wanting that bad, ain't he? Has he shot anybody with it?" Small Video, 00:23:50Z. "Max" presumably refers to Max Barrett, Undersheriff of Pratt County, Kansas, who was also on the scene. These comments are substantially similar to those alleged in the Complaint.

{00529832}  14

Brewer come forward with the shotgun. It would also explain why Sheriff Small was completely unfazed when he heard a shotgun blast from the backyard. He knew Steven Myers was not armed with a shotgun and he knew the plan was for Brewer to hit him with a beanbag. The "pass out and die" comment and his giggling banter with another officer about finally getting to shoot someone with the beanbag further support the conspiracy claim, as does Small's much more circumspect approach with the Coroner.

The conspiracy claim is plausible, and that is all that is required at the pleading stage. The Court should deny Undersheriff Brewer's motion to dismiss.

### C. The pendent wrongful death state law claims and official capacity claims should proceed.

Brewer incorporated by reference Defendant Small's arguments with regard to the state law claims. Plaintiff addressed those arguments in her Memorandum in Opposition to Small's Motion to Dismiss (Doc. 24, Part IV, B & C) and incorporates her arguments here.

### V. CONCLUSION

Every reasonable officer would know that firing a 12-gauge shotgun at a man's chest, no matter the ammunition, from less than 10 feet away constitutes the use of deadly force. The law is clearly established that an officer may not seize an unarmed, non-dangerous suspect by shooting him dead. *Tennessee v. Garner*, 471 U.S. at 11; *Zuchel*, 890 F.2d at 275.

The allegations of the Complaint—which should be the Court's only consideration on this 12(b)(6) motion—are that Steven Myers complied with orders to come out of the shed. He stood still in the middle of the yard while inconsistent commands were shouted simultaneously at him. He made no move toward any officer, did not attempt to flee, and plainly carried no weapon.

Brewer callously shot Steven Myers in the chest, killing him. For that, he is not entitled to qualified immunity. The motion to dismiss (Doc. 17) must be denied.

Dated: February 2, 2018

Respectfully submitted:

*/s/ Michael T. Crabb*
Michael J. Kuckelman   KS #14587
Michael T. Crabb   KS #24395
Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Suite 250
Overland Park, KS 66211
913-948-8610 (phone)   913-948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Michael T. Crabb*
Attorney for Plaintiffs