**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **KRISTINA MYERS, et al.,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) Case No. 17-2682 <br> **VIRGIL BREWER, et al.,** ) <br> ) <br> Defendants. ) <br> ) | |

## MEMORANDUM AND ORDER

This case arises out of the death of Steven P. Myers. Mr. Myers was shot with a "beanbag round" from a 12-gauge shotgun at a distance of six to eight feet. At the time, Mr. Myers was not brandishing a weapon or attempting to escape. Defendant Virgil Brewer, Undersheriff of Barber County, Kansas, fired the beanbag round. Defendant Lonnie Small, Sheriff of Barber County, was present at the scene but withdrew with his K-9 just before the shooting. Mr. Myers died at the scene. The shooting, as well as the events leading up to the shooting, were captured on audio and/or video recording.

Plaintiff Kristina Myers, individually, as Administrator of the Estate of Steven P. Myers, and as natural parent and legal guardian of K.D.M., C.F.M., and K.J.M., minors, claims that defendants Brewer and Small are responsible in both their individual and official capacities for the death of her husband. She brings the following claims: (1) Count I: § 1983 claim for excessive force in violation of the Fourth and Fourteenth Amendments (on behalf of the estate); (2) Count II: § 1983 claim for survival (on behalf of the estate); (3) Count III: § 1983 claim for conspiracy to use excessive force (on behalf of the estate); (4) Count IV: § 1983 claim for violation of the civil right to familial relationship

1

(on behalf of herself and the children); and (5) Count V: wrongful death under Kansas law (on behalf of herself and the children).

Defendants Brewer and Small each separately moved to dismiss plaintiff's complaint. In defendant Small's motion to dismiss (Doc. 10), defendant Small asks for dismissal on the following grounds:

(1) He is entitled to qualified immunity on the claims against him in his individual capacity because
    (a) the complaint does not allege that he personally participated in the application of force;
    (b) the allegations of conspiracy are insufficient; and
    (c) no clearly established law suggests that defendant Small's conduct was plainly incompetent or in knowing violation of the law;
(2) There is no viable official capacity claim; and
(3) The state law claims are not viable because
    (a) defendant Small has Eleventh Amendment immunity;
    (b) the complaint does not allege that defendant Small used any force against Mr. Myers; and
    (c) the court may decline supplemental jurisdiction.

Defendant Brewer moves for dismissal on similar grounds in Doc. 17:

(1) He is entitled to qualified immunity because his actions, in a tense and rapidly-evolving situation, did not violate any clearly established rights of plaintiff;
(2) There is not a valid official capacity claim against defendant Brewer;
(3) Plaintiff failed to plead any facts sufficient to establish a viable conspiracy claim; and
(4) The court should decline to exercise supplemental jurisdiction over the state law claims.

For the following reasons, the court grants defendant Small's motion and grants in part and denies in part defendant Brewer's motion.

## I. Factual Background

The following facts are taken from plaintiff's complaint. The court has also considered the content of the video recordings submitted by defendants. The videos are referenced in the complaint and are central to the complaint. It is well-settled that on a motion to dismiss, the court may consider documents referenced in a complaint that are also central to the complaint. *See GFF Corp. v. Assoc.*

*Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997). It is further well-settled that when a non-moving party's version of the facts are plainly contradicted by video, the court need not view the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (deciding, at summary judgment stage—not the motion to dismiss stage—that the content of a videotape recording controlled when it "blatantly contradicted" the plaintiff's version of the facts). The court sees no difference between considering documents referenced in the complaint and considering video and audio referenced in the complaint. *But cf. McHenry v. City of Ottawa*, No. 16-3726-DDC, 2017 WL 4269903, at *4 (D. Kan. Sept. 26, 2017) (declining to consider video when the video was not incorporated by reference or central to the plaintiff's complaint). To the extent the allegations in plaintiff's complaint are "blatantly contradicted" by the videos, the court has considered the videos instead of the unsupported factual allegations.

Moreover, the videos are part of the public record in another court case. A court may take judicial notice of facts that are a matter of public record and of state court documents. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (citations omitted). The court does so without converting a motion to dismiss into a motion for summary judgment. *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (citations omitted). With these standards in mind, the court now turns to the facts of the case.

On October 6, 2017 at 6:26 p.m., the Barber County Sheriff's Office received a 9-1-1 call, reporting that Steven Myers was threatening people with a shotgun in the street in front of Buster's Bar in Sun City, Kansas. The caller indicated that Mr. Myers was drunk and had been thrown out of the

bar for fighting. Four officers from Barber County responded: defendants Small and Brewer, as well as Deputies Suchy and Miller. The officers were not close, however, and by the time they arrived, Mr. Myers had left the area. In fact, Mr. Myers had returned home, put away the shotgun, and had taken his dog for a walk. But the officers were unaware of this fact.

When the officers arrived in Sun City at 7:07 p.m.—approximately forty-one minutes after the call—they began searching house-to-house for Mr. Myers. While searching, defendant Small remarked that, with a little luck, Mr. Myers would "just pass out and die."

Eventually, defendant Small spotted Mr. Myers in a shed in a home's backyard, about fifteen feet away. At the time, defendant Small was in the back door of the house with a K-9. Defendant Small shouted for Mr. Myers to come out of the shed, and then immediately turned around and led the K-9 toward the front door, away from Mr. Myers. Mr. Myers yelled back at defendant Small. Defendant Brewer and Deputy Suchy began shouting at Mr. Myers, telling him to put his hands up and get on the ground. Mr. Myers did not comply with either command. He was also apparently moving toward the house.

After about eight seconds of yelling, defendant Brewer fired his 12-gauge shotgun at Mr. Myers's chest from a distance of six to eight feet. Defendant Brewer fired a beanbag round, which is a small fabric pouch filled with lead pellets. When used appropriately, a beanbag round is intended to be a less-lethal weapon. But when fired from less than ten feet at a subject's chest, the rounds still present risk of serious injury or death.

After being hit, Mr. Myers fell to his knees and collapsed face-down. When defendant Brewer fired the gun, defendant Small was exiting the front door of the home. He passed the home's occupant and commented that defendant Brewer had "beanbag rounded him. He didn't . . . it wasn't lethal."

Defendant Small then told another officer, "Shot him with a beanbag round. Hadn't shot anybody with it yet." After that, defendant Small disabled his body camera.

Defendant Brewer and Deputy Suchy remained with Mr. Myers. They handcuffed him and rolled him over so his face was up. Mr. Myers's shirt was covered in blood, and Deputy Suchy began performing CPR about five-and-a-half minutes after the gunshot. One of the officers called for EMS. Twenty-two minutes later, EMS arrived. They encouraged Deputy Suchy to continue his resuscitation efforts. EMS and law enforcement discussed the heavy odor of alcohol coming from Mr. Myers.

When the coroner arrived, he assessed the scene and said, "That's from a beanbag? Holy shit! I thought they weren't supposed to penetrate. Must've been pretty damn close, like six to eight feet maybe?" The coroner asked if Mr. Myers was inside the house. Deputy Suchy began to answer, but defendant Small interrupted and said, "Don't tell him everything but just that he got shot here." The coroner agreed, "I don't need to know all the facts." Defendant Small continued, "Right, because KBI don't want [the coroner] to know [everything.]" Defendant Small later told Deputy Suchy to disable his body camera, even though the deputy remained on the scene for several more hours. The coroner called Mr. Myers's death at 8:08 p.m.

Plaintiff alleges that the Barber County Sheriff's Office "maintains no policy or procedures, and provides no training to its officers, for the appropriate use of beanbag shotgun rounds." (Doc. 1, at 7.)

## II. Legal Standards

### A. *Standards for Dismissal under Rule 12(b)(6)*

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief

5

"through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal*, 453 F.3d at 1252.

### B. *Standards for Qualified Immunity on Individual Capacity Claims*

Both defendants have asked the court to grant them qualified immunity on the § 1983 claims against them in their individual capacities. For ease of reference, the court lays out the standards for evaluating qualified immunity here.

The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official. *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citing *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011)). Moreover, the inquiry is not whether the general right to be free from excessive force is clearly

established—because it is—the inquiry is whether plaintiff had a clearly established right under the particular facts of this case. *Long v. Fulmer*, 545 F. App'x 757, 760 (10th Cir. 2013).

**III.     Discussion**

    *A.     Defendant Small's Motion to Dismiss*

        1.     <u>Individual Capacity Claims</u>

As noted above, defendant Small asks that the court grant him qualified immunity on the claims against him in his individual capacity on three bases: (1) defendant Small did not personally participate in the application of force; (2) defendant Small cannot be liable for conspiring; and (3) no clearly established law exists showing that defendant Small's conduct was plainly incompetent or in knowing violation of the law. The court addresses the first two of these arguments below, as it is unnecessary to reach the third argument.

        *a. Personal Participation*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). Liability under § 1983 cannot be based on supervisory status alone; there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id*. (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)); *see also Dodds v. Richardson*, No. 09–6157, 2010 WL 3064002, at *8–10 (10th Cir. Aug. 6, 2010) (reviewing standards for § 1983 supervisory liability in light of *Iqbal*; holding stricter burden on plaintiff still requires affirmative link; plaintiff must establish (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional

7

deprivation); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (holding that a supervisor is not liable under § 1983 unless an "affirmative link" exists between the constitutional deprivation and the supervisor's personal participation).

"For liability under section 1983, direct participation is not necessary. Any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008) (citing *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)). In terms of causation, the "requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* at 1279–80.

Plaintiff fails to adequately allege an affirmative link between defendant Brewer's actions and defendant Small. There is no allegation here that defendant Small created a policy or was responsible for a policy of shooting a less-lethal gun from close range. Defendant Small saw Mr. Myers, told defendant Brewer where he was, and the retreated to the front door with his dog. Defendant Small did not shoot the gun, and there is no allegation that he instructed defendant Brewer to do so or that defendant Brewer was restricted from acting without direction from defendant Small. None of defendant Small's actions caused defendant Brewer to shoot the beanbag round from the shotgun— much less to shoot it from a distance of six-to-eight feet. And there are no allegations that defendant Small had the required state of mind for a constitutional violation. To the contrary, the allegations are that defendant Small did not think the gunshot would result in a fatality, and that he was not concerned when he heard the shot fired.

For these reasons, the court determines that based on the allegations in plaintiff's complaint and the videos submitted to the extent that they contradict the complaint, plaintiff has not adequately alleged the personal participation of defendant Small. He therefore has not stated a constitutional

violation by defendant Small, and defendant Small is entitled to qualified immunity in his individual capacity.

### b. *Conspiracy*

To adequately allege a conspiracy, plaintiff must allege "a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants or a general conspiratorial objective" to violate a constitutional right. *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010). Conclusory allegations are insufficient. *Shimomura v. Carlson*, 811 F.3d 349, 359 (10th Cir. 2015).

Plaintiff claims that the following allegations support a conspiracy between defendants Small and Brewer:

- While walking to the house where [Mr. Myers] was located, Sheriff Small was recorded muttering to Undersheriff Brewer "A little luck and he'll just pass out and die." Doc. 1, ¶ 69.

- After Sheriff Small commanded Steven Myers to come out of the shed, rather than continue to command the situation, he ordered Brewer to come forward and confront [Mr. Myers] with the shotgun loaded with beanbag rounds. *Id*. ¶ 70.

- Sheriff Small was just exiting the front door when the gun blasted behind him. Without skipping a beat or turning to look, Small told the homeowner on the front porch, "beanbag rounded him." *Id*. ¶ 71.

- Just after the shooting, Sheriff Small was recorded jovially telling another officer "Shot him with a beanbag round. Hadn't shot anybody with it yet." *Id*. ¶ 72.2

- As the Coroner asked questions at the scene, Sheriff Small instructed a deputy "Don't tell him everything." *Id*. ¶ 73.

(Doc. 24, at 10.)

These allegations do not identify when or how an agreement was formed, or what conspiratorial objective defendants Small and Brewer agreed to. The comment about Mr. Myers passing out and dying, while distasteful, suggests no agreement at all to use excessive

9

force on Mr. Myers. And defendant Small's comments after the shooting indicate only that he knew a beanbag round had been used—not that he had agreed ahead of time to use the shotgun in such a manner as to result on the death of Mr. Myers. The court concludes that any suggestion of an agreement to use excessive force is conclusory. The allegations above demonstrate only the parallel conduct of law enforcement responding to a call. *See Canfield v. Douglas Cnty.*, 619 F. App'x 774, 778 (10th Cir. 2015). The court dismisses the conspiracy claim.

### 2. Official Capacity Claims

Defendant Small moves to dismiss the claims against him in his official capacity on the basis of Eleventh Amendment immunity. The Eleventh Amendment provides immunity to unconsenting states and those acting on their behalf from federal suits for money damages. U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). It does not, however, extend immunity to counties, municipalities, or other local government entities. *Steadfast Ins. Co. v. Agric. In. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citation omitted). In determining whether a particular entity receives Eleventh Amendment immunity, the court considers whether the entity is an "arm of the state." *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977). *Steadfast* sets forth a four-factor test for this analysis: (1) How is the entity is characterized under state law? (2) What is the entity's degree of autonomy from the state? (3) Where does the entity get its operating funds? (4) Is the entity primarily concerned with state or local affairs? 507 F.3d at 1253. "If a state entity is more like a political subdivision—such as a county or city—than it is like an instrumentality of the state, that entity is not entitled to Eleventh Amendment immunity." *Id.*

The Tenth Circuit and a number of courts in the District of Kansas have held that Kansas sheriffs act on behalf of the state and are therefore immune from suit in federal court. *See Hunter v.*

*Young*, 238 F. App'x 336, 338 (10th Cir. 2007); *Broyles v. Marks*, No. 18-3030-SAC, 2018 WL 2321822, at *4 (D. Kan. May 22, 2018); *Self v. Cnty. of Greenwood*, No. 12-1317-JTM, 2013 WL 615652, at *2 (D. Kan. Feb. 19, 2013); *Brown v. Kochanowski*, No. 07-3062-SAC, 2012 WL 4127959, at *9 n.3 (D. Kan. Sept. 19, 2012), *aff'd* 513 F. App'x 715 (10th Cir. 2013). But a few District of Kansas courts have found that sheriffs are not entitled to immunity in Kansas. *See*, *e.g., Trujillo v. City of Newton*, No. 12-2380-JAR, 2013 WL 535747, at *10 (D. Kan. Feb. 12, 2013); *Reyes v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 07-2193-KHV, 2008 WL 2704160, at *7–9 (D. Kan. July 3, 2008).

This court agrees with the analysis in those cases finding Kansas sheriffs immune under the Eleventh Amendment. First, the Kansas legislature created the office of the sheriff. Kan. Stat. Ann. § 19-801a. Sheriffs in Kansas are required—by statute—"to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace, they, and every coroner, may call to their aid such person or persons of their county as they may deem necessary." Kan. Stat. Ann. § 19-813. And the State of Kansas is responsible for prosecuting violations of Kansas law. *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009) (holding that county attorneys act on behalf of the state, not the county, in Kansas). Second, the board of county commissioners in Kansas lacks authority to determine how a county sheriff chooses his employees or expends budgeted funds. *Bd. of Cnty. Comm'rs v. Nielander*, 62 P.3d 247, 251 (Kan. 2003). County sheriffs are not subject to local control. Rather,

> The sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature. The sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants. Rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board.

*Id.*

The third and fourth factors are not significant. Even if the county funds the sheriff's operations and the sheriff has relatively limited geographical authority, these factors were the same for county attorneys in *Nielander*, and the Tenth Circuit still held that they were entitled to Eleventh Amendment immunity. 582 F.3d at 1164; *see also McMillian v. Monroe Cnty.*, 520 U.S. 781, 791 (1997) (recognizing that salary source and geographic limitations are not dispositive of whether an entity is an arm of the state). Based on these factors, as well as *Hunter v. Young* (albeit an unpublished opinion), the court determines that defendant Small is entitled to Eleventh Amendment immunity. The claims against him in his official capacity cannot be brought in federal court. They are dismissed without prejudice.

### 3. State Law Claims

Finally, defendant Small asks the court to dismiss the state law claims against him on three grounds: (1) he is entitled to Eleventh Amendment Immunity; (2) there is no allegation of force on the part of defendant Small; and (3) the court may decline to exercise supplemental jurisdiction over the state law claims. The court addresses only the first and third arguments below.

#### a. Eleventh Amendment Immunity

Because the court has determined that defendant Small is entitled to Eleventh Amendment immunity for the federal claims against him in his official capacity, the state law claims against in him his official capacity are barred, as well. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121–22 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment").

#### b. Supplemental Jurisdiction

It is unclear to the court whether plaintiff brings the state law claims against defendant Small in his official capacity or individual capacity or both. To the extent that plaintiff intended to sue defendant Small in his individual capacity for wrongful death, the court declines to exercise supplemental jurisdiction over that claim. Although there are federal claims remaining in the case, it would be ineffective and inefficient to split the wrongful death claims between state and federal court (assuming plaintiff elects to refile the official capacity claims in state court). A state court would not have the same Eleventh Amendment immunity issues with the official capacity wrongful death claims, and the court is dismissing these claims without prejudice. The concepts of federalism and comity support allowing a state court to hear plaintiff's lawsuit for violations of state wrongful death law—against defendant Small in all capacities. *See Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995). The court therefore declines to exercise supplemental jurisdiction over any state law claims against defendant Small in his individual capacity.

4. Count IV - § 1983 Claim for Loss of Familial Relationship

As a final note, in a footnote, defendant Small sought dismissal of Count IV independently of any arguments about qualified immunity or Eleventh Amendment immunity. Count IV is essentially a federal version of the wrongful death claim. Wrongful death actions are not actionable under § 1983. *Tomme v. City of Topeka*, No. 89-2033-GTV, 1992 WL 81334, at *3 (D. Kan. Mar. 4, 1992). "[A] § 1983 claim must be based on the violation of plaintiff's personal rights and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). Plaintiff did not respond to this argument, and the court determines that Count IV should be dismissed (as to defendant Brewer, as well).

**B. Defendant Brewer's Motion to Dismiss**

1. Individual Capacity Claims

*a. Constitutional Violation*

To be liable under § 1983, a defendant must engage in a deliberate deprivation of constitutional rights—not a negligent deprivation. *Woodward v. Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992); *Moore v. Bd. of Cnty. Comm'rs* , 470 F. Supp. 2d 1237, 1246 (D. Kan. 2007). Officers are afforded some "breathing room" to make reasonable mistakes while making quick decisions in "tense, uncertain and rapidly evolving situations." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The constitution requires reasonable means—not the least intrusive means. *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009); *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). And officers may take protective action without waiting for the "glint of steel." *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). An officer would be justified in using more force than necessary if he reasonably (but mistakenly) believed that a subject was likely to fight back. *Id.* In resolving an excessive force question in the context of qualified immunity on a motion to dismiss, courts consider and balance three factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee." *Long*, 545 F. App'x at 760 (citing *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012), and *Graham*, 490 U.S. at 396).

Applying these factors to the facts of this case, the pleaded facts indicate that the crime was not particularly severe. The officers had information that Mr. Myers was drunk and threatening people with a shotgun. But they also knew that incident had happened over forty minutes before their arrival and that Mr. Myers was no longer in the same spot. These facts also implicate the second factor—whether Mr. Myers represented an immediate threat to the safety of anyone. Based on the information the officers had, at one point, Mr. Myers had likely represented an immediate threat. But again, a significant amount of time had passed before officers arrived on the scene. And third, whether Mr.

Myers was actively resisting arrest or attempting to flee is debatable. He was not obeying the officers' directions, he was yelling at them, and it appears that he was moving closer to defendant Brewer in the doorway, but there is an issue of fact as to whether he was "resisting arrest" at the time of the shooting. *Cf. Dixon v. Richer*, 922 F.2d 1456, 1462 (10th Cir. 1991) (holding that swearing at officers could reasonably be perceived as resistance). The video suggests that Mr. Myers was being belligerent, but the court cannot make out the entire scene or most of the words with confidence.

The parties spend considerable time debating over whether use of a shotgun to shoot beanbag pouches qualifies as "deadly force." "Deadly force includes force that the actor uses with the purpose of causing or that he knows to create a substantial risk of causing death or serious bodily harm, including purposefully firing a firearm in the direction of another person." *King v. Hill*, 615 F. App'x 470, 474 (10th Cir. 2015); *see also Tenorio v. Pitzer*, No. CV 12-01295 MCA/KBM, 2014 WL 11429062, at *4 (D.N.M. May 28, 2014), *aff'd*, 802 F.3d 1160 (10th Cir. 2015) ("Due to the limited space within the living room, the bean bag rounds were not a non-lethal option."). "Whether an officer acted reasonably in using deadly force is 'heavily fact dependent.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (quoting *Romero v. Bd. of Cnty. Comm'rs*, 60 F.3d 702, 705 n.5 (10th Cir. 1995)).

The court does not believe that the characterization of the type of force defendant Brewer used is a determining factor as to whether plaintiff has adequately alleged a constitutional violation. Regardless of whether defendant Brewer intended for the beanbag pouch to be deadly, the unfortunate fact is that it was. Independently of whether this constituted "deadly force," there is a question of whether it was excessive for the situation. The court determines that plaintiff has adequately alleged a constitutional violation.

> *b. Clearly Established*

To show that a law is "clearly established," a plaintiff must identify pre-existing precedent that places the "constitutional question beyond debate." *Yeasin v. Durham*, 719 F. App'x 844, 850 (10th Cir. 2018 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). A plaintiff must identify "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007) (citation omitted). The relevant precedent need not be directly on point, but the plaintiff "must do more than cite case law announcing a legal rule 'at a high level of generality.'" *Yeasin*, 719 F. App'x at 850. The precedent must be particularized to the facts of this case, *id.*, making it sufficiently clear such that every reasonable official would have known that the defendant's actions would violate the plaintiff's rights, *Reichle v. Howards*, 566 U.S. 658, 664 (2012). But the Tenth Circuit has counseled that "[w]e cannot find qualified immunity wherever we have a new fact pattern." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). *Casey* applied a "sliding scale" concept to evaluating whether a right is clearly established—the more egregious the conduct, the less specificity is required from prior case law. This sliding scale test has been called into question recently, *see McCoy v. Meyers*, 887 F.3d 1034, 1053 n.22 (10th Cir. 2018), but the Tenth Circuit has not yet decided that it conflicts with Supreme Court authority. If force is clearly unjustified based on the *Graham* factors, then the court may conclude that a right is clearly established, even in the absence of similar prior cases. *Morris v. Noe*, 672 F.3d 1185, 1197–98 (10th Cir. 2012).

The parties disagree over the definition of the right that must have been clearly established for defendant Brewer to lose the protection of qualified immunity. Plaintiff urges the court to apply the general principle that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Defendant Brewer, on the other hand, argues that the right is an alleged right not to be shot with a beanbag gun when the suspect is advancing on the

officer, yelling belligerently, and refusing to comply with directions. The court determines that the appropriate definition is somewhere between the two. It is the right not to be shot with a high-speed projectile (even a less-lethal one) at close range when unarmed and making no apparent move to attack an officer or bystander. In this situation, the *Graham* factors indicate that the force was unjustified— even if there is not a Tenth Circuit case that has said that shooting a beanbag pouch out of a shotgun, at very close range, at a non-threatening suspect is unreasonable. In a similar situation, the Tenth Circuit cited an Eleventh Circuit case, *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (holding that "officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force was excessive" when the arrestees had not committed a serious crime, did not pose an immediate threat, and were not actively resisting arrest), for the principle that a reasonable officer would know based on his training that such force was not justified. *Morris*, 672 F.3d at 1198.

Taking plaintiff's allegations as true, the court determines that plaintiff has adequately alleged that defendant Brewer violated this clearly established right. The video does not present a clear contradiction to plaintiff's allegations on this issue. While it appears that plaintiff moved forward from the shed, the court cannot make other determinations about the nature of his movement and what it reasonably conveyed to defendant Brewer. The court cannot make factual findings on the scene based on the video at this stage of the proceedings. Defendant Brewer is not entitled to qualified immunity at this time.

### 2. Official Capacity Claims

For the same reasons given above with respect to the claims against defendant Small in his official capacity, the official capacity claims against defendant Brewer are barred by the Eleventh Amendment.

### 3. State Law Claims

For the same reasons given above with respect to the state law claims against defendant Small, the court dismisses the state law claims against defendant Brewer without prejudice.

**IT IS THEREFORE ORDERED** that Sheriff Small's Motion to Dismiss (Doc. 10) is granted. Defendant Small is dismissed from the case.

**IT IS FURTHER ORDERED** that Virgil Brewer's Motion (Doc. 17) is granted in part and denied in part.

Dated this 27th day of June, 2018, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**