FILED  
United States Court of Appeals  
Tenth Circuit  

**July 24, 2019**

Elisabeth A. Shumaker  
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

KRISTINA MYERS, individually, and as administrator of the Estate of Steven P. Myers, and as natural parent and legal guardian of K.D.M., C.F.M. and K.J.M., minors,

    Plaintiff - Appellee,

v.

VIRGIL BREWER, individually and in his official capacity as Undersheriff of Barber County, Kansas,

    Defendant - Appellant,

and

LONNIE SMALL, individually and in his official capacity as Sheriff of Barber County, Kansas,

    Defendant.

No. 18-3145  
(D.C. No. 2:17-CV-02682-CM-JPO)  
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Virgil Brewer, Undersheriff of Barber County, Kansas, shot and killed Steven Myers with a beanbag round fired from a 12-gauge shotgun. After the shooting, Mr. Myers' wife, Kristina Myers, commenced this action in the district court, which dismissed or declined to exercise jurisdiction over most of her claims, though it refused to dismiss her excessive force claim under Fed. R. Civ. P. 12(b)(6) based on qualified immunity. Undersheriff Brewer appealed, and Ms. Myers moved to dismiss the appeal for lack of jurisdiction.[1] For the following reasons, we deny the motion to dismiss and affirm the denial of qualified immunity.

I

On October 6, 2017, at 6:26 pm, the Barber County Sheriff's office received a call indicating that Mr. Myers was in front of a bar with a shotgun.[2] Forty-one minutes later, at 7:07 pm, several officers, including Undersheriff Brewer, Sheriff Lonnie Small, and Deputy Mark Suchy, arrived on scene. Mr. Myers had already gone home, put away his gun, and taken his dog for a walk, but officers began searching for him house-to-house. Sheriff Small entered one house with his K-9, followed by Undersheriff Brewer and

---

[1] Undersheriff Brewer asserts "[t]his . . . is an appeal from a final judgment under Fed. R. Civ. P. 54(b), and this Court has jurisdiction under 28 U.S.C. § 1291." Aplt. Br. at 1. In fact, this is an interlocutory appeal from the denial of qualified immunity, and the district court docket sheet confirms that court never entered a Rule 54(b) certification. *See* Aplt. App., Vol. 1 at 1-6.

[2] Because this case was decided on a Rule 12(b)(6) motion, "we accept all well-pleaded factual allegations in the complaint as true," *Thomas v. Kaven*, 765 F.3d 1183, 1188 n.1 (10th Cir. 2014), and may consider audio and video recordings taken from the responding officers' body cameras, which are referenced in the complaint, *see Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 & n.22 (10th Cir. 2017).

Deputy Suchy. Sheriff Small reached the back door and spotted Mr. Myers in a backyard shed, approximately fifteen feet away. Sheriff Small shouted for Mr. Myers to come out of the shed as he turned and led the K-9 away, telling Undersheriff Brewer, "he's in the shed," Aplt. App., Vol. 1 at 10, para. 30. Sheriff Small pointed for Undersheriff Brewer to confront Mr. Myers, who, seconds later, emerged from the shed and stood in the backyard, unarmed.

Undersheriff Brewer and Deputy Suchy shouted to Mr. Myers, "Put your hands up!" and "Get on the ground!" Id. at 11, para. 33. Mr. Myers continued standing "in the yard, with empty hands at his sides." Id., para. 34. After eight seconds, Undersheriff Brewer shot him in the chest with a beanbag round fired from a 12-gauge shotgun from a distance of approximately six to eight feet. Mr. Myers screamed, "Ow!," fell to his hands and knees, and then collapsed face down on the ground. Id., para. 39. Undersheriff Brewer handcuffed him and rolled him over; his shirt was covered with blood, which began to pool on the ground. After some five and half minutes, Deputy Suchy commenced CPR. When the coroner arrived, he assessed the scene and said, "That's from a beanbag? Holy shit! I thought they weren't supposed to penetrate. Must've been pretty damn close, like six to eight feet maybe?" Id. at 12, para. 49. Deputy Suchy and another officer continued their efforts to resuscitate Mr. Myers, but they failed, and he was pronounced dead at the scene.

Ms. Myers brought this action on behalf of her husband's estate and their three minor children. She asserted claims against Sheriff Small and Undersheriff Brewer in their individual and official capacities for excessive force in violation of the Fourth

3

Amendment (count one), "[s]urvival," *id.* at 14, (count two), conspiracy to use excessive force (count three), violation of the civil right to familial relationship (count four), and wrongful death under state law (count five). Undersheriff Brewer and Sheriff Small filed separate motions to dismiss under Rule 12(b)(6) based on qualified immunity. They also submitted recordings of the call and videos captured by the responding officers' dash and body cameras, including Deputy Suchy's body camera, which partially recorded the shooting.

The district court considered this material and dismissed all but the excessive force claim against Undersheriff Brewer, declining to exercise supplemental jurisdiction over the state law individual capacity claims. Those rulings are not before us. Regarding the excessive force claim against Undersheriff Brewer, the district court concluded that the video taken from Deputy Suchy's body camera did not clearly contradict the allegations in the complaint, which adequately alleged a constitutional violation. The court further concluded that the complaint adequately alleged a violation of clearly established law, and thus Undersheriff Brewer was not entitled to qualified immunity at this stage of the proceedings. This appeal followed.[3]

## II

We review de novo the district court's denial of a Rule 12(b)(6) motion to dismiss based on qualified immunity. *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999).

---

[3] Ms. Myers moved to dismiss the appeal, asserting the district court identified factual issues precluding qualified immunity. *See Johnson v. Jones*, 515 U.S. 304, 313-14 (1995). We deny the motion to dismiss because, as set out below, this appeal involves issues of law.

"A defendant may immediately appeal the denial of a 12(b)(6) motion based on qualified immunity to the extent that denial turns on an issue of law." *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996)). We agree with the district court, as a matter of law, that the video here does not clearly contradict the allegations in the complaint, and we confine our analysis accordingly. "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (brackets and internal quotation marks omitted). We evaluate "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

"We review [Fourth Amendment] excessive force claims under a standard of objective reasonableness, judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (internal quotation marks omitted), *cert. denied*, 138 S. Ct. 2650 (2018). We evaluate the totality of circumstances, "allow[ing] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

situation." *Plumhoff v. Rickard*, 572 U.S. 765, 774-75 (2014) (brackets and internal quotation marks omitted). Our analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Pauly*, 874 F.3d at 1215 (emphasis and internal quotation marks omitted).

The circumstances here, as alleged in the complaint, are sufficient to indicate a Fourth Amendment violation. There was no crime at issue, and although the police received a call that Mr. Myers was in front of a bar with a shotgun, there are no allegations that he was prohibited from possessing a shotgun in public. Nor did he pose an immediate threat to the officers or anyone else—the officers did not arrive on scene for some forty-one minutes, and there are no allegations that Mr. Myers threatened anyone in the interim.[4] Indeed, the complaint avers that he went home, put away his gun, and took his dog for a walk. When the officers later encountered Mr. Myers, they ordered him out of the backyard shed and, "[w]ithin a few seconds . . . [he] was standing—unarmed—outside of the shed in the middle of the backyard." Aplt. App., Vol. 1 at 11, para. 32. Although he did not immediately comply with Undersheriff Brewer and Deputy Suchy's orders to put his hands up and get on the ground,

---

[4] Even if we must accept Undersheriff Brewer's assertion that he believed Mr. Myers had committed aggravated assault by threatening people with the shotgun in front of the bar, our conclusion remains unchanged because the allegations in light of the totality of circumstances remain sufficient to allege a constitutional violation. *See Morris v. Noe*, 672 F.3d 1185, 1195 n.4 (10th Cir. 2012).

Undersheriff Brewer fired the beanbag round "[a]fter a mere eight seconds of shouting inconsistent commands at [Mr.] Myers." *Id.*, para. 36. Yet there are no allegations that Mr. Myers was actively resisting arrest or attempting to evade arrest. Rather, the complaint alleges that he was shot as he "stood in the yard, with empty hands at his sides." *Id.*, para. 34. According to the complaint, he "did not threaten the officers, brandish a weapon, or attempt to escape." *Id.*, para. 35. These allegations state a constitutional violation and satisfy the first prong of the qualified immunity analysis.

We turn to whether the law was clearly established. The Supreme Court has repeatedly admonished "courts not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (ellipsis and internal quotation marks omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (internal quotation marks omitted).

Undersheriff Brewer shot Mr. Myers from a distance of six to eight feet with a beanbag round fired from a 12-gauge shotgun. Although Mr. Myers had been in front of a bar with a shotgun some forty-one minutes earlier, when Undersheriff Brewer confronted him he had committed no crime, possessed no weapon, and immediately complied with the order to come out of the shed. He neither resisted arrest nor attempted

to flee, though he did fail to put his hands up and get on the ground within the eight seconds of being ordered to do so before Undersheriff Brewer fired the beanbag. We have held it is clearly established that an officer uses excessive force when he executes a forceful takedown of a subject who at most was a misdemeanant, but otherwise posed no threat and did not resist arrest or flee. *See Morris*, 672 F.3d at 1198. We have also held it is clearly established that an officer uses excessive force when he shoots a subject who possessed a knife and took three steps toward the officer from a distance of some five to ten feet but otherwise made no threatening motion. *See Tenorio v. Pitzer*, 802 F.3d 1160, 1165-66 (10th Cir. 2015). Indeed, our decision in *Tenorio* was predicated on *Zuchel v. City & County of Denver*, 997 F.2d 730, 735 (10th Cir. 1993), where a restaurant manager called the police because Zuchel had created a disturbance. By the time the police arrived, Zuchel had left and was found nearby in a "heated exchange" with several teenagers, one of whom shouted—incorrectly—that he had a knife. *Id.* Zuchel took "three wobbly steps toward" the officer, who was six to eight feet away, and the officer shot him. *Id.* at 736. We held this evidence was sufficient to support a jury finding that the officer's use of force was not objectively reasonable. *Id.* We think *Zuchel*, *Tenorio*, and *Morris* clearly established that the use of force under the circumstances confronted by Undersheriff Brewer here was not objectively reasonable. Accordingly, we affirm the denial of qualified immunity.

8

III

The motion to dismiss this appeal is denied, and the judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge